WM. L. REILLY AND AMELIA L., HIS WIFE, *vs.* JAMES WHIPPLE.

On a bill by A. against B., for partition of land, held under a deed of trust, the Circuit Court held, upon the construction of the deed, that the parties were entitled to a joint estate in the land during their joint lives at least; and, without deciding to whom the land would go on the termination of that estate, ordered a writ of partition to issue: *Held*, That the failure of the Circuit Court to decide to whom the land would go at the termination of the joint estate for life was not error; and that the question as to the limitations would come up if, upon the return to the writ, a sale should be ordered; in which event, provision should be made to protect those limitations.

A purchaser of land may direct the seller to insert in the conveyance trusts for the benefit of another; and, if he does so, intending it as a gift, and the trusts are inserted, he is bound by them.

BEFORE LESESNE, CH., AT CHARLESTON, DECEMBER, 1868.

Appeal from the Circuit decree, which contains everything necessary to a full understanding of the case, and is as follows:

LESESNE, Ch. In the year 1856, a conveyance of a house was executed by Harriet S. English and others to the defendant, James Whipple, in trust, for the joint use of himself and his wife, Mary Ann Whipple, during their joint lives, and after her death, in the case of her dying first, for the joint use of him and of her daughter, Amelia L. Yates, now Amelia L. Reilly, the plaintiff, during their joint lives, with other limitations and provisions, which it may be necessary to notice hereafter. Mary Ann Whipple died some time after, and this bill was filed in January, 1867, and asks for an account and payment to the plaintiff of one-half of the rents and profits accrued since her mother's death, and for partition of the property between her and the defendant.

The defendant denies that Mary Ann Whipple, the mother of the plaintiff, was his wife; and affirms that the property was purchased with his money, and for himself; that, being an illiterate man, unable to write or read, he entrusted the purchase money, $3,000, to the said Mary Ann, and directed her to pay the same, and have the papers drawn in his name, which she afterwards told him had been done. That the said Mary Ann, a short time before her death, told him that the paper had been left with Mr. DeSaussure, from whom he got it; and that he was not aware of its contents until he had it read to him, after the war, when the plaintiff applied to him for money. Defendant asks that the deed be set aside as null and void. The deed was prepared by Wilmot G. DeSaussure, Esq., who testifies that Whipple gave instructions for the same at the office of DeSaussure & Son, and that Mrs. Whipple

was present.    That Whipple represented that the money to be used for the purchase of the house had been earned partly by her, and that she had also received some money from a friend at the North. That, after discussion, it was arranged that the title should be taken in the manner indicated above; and, before the same was executed, it was read over by him, and explained to Whipple.    Mrs. Reilly, the plaintiff, testifies, too, that, after her mother's death, she read the deed to Whipple, who remarked that it was all right; also, that some of the money which was used to pay for the house was her mother's.

Several witnesses were examined, on behalf of the defendant, to prove that Mrs. Whipple had no money, and that Whipple had given her the money, and directed her to have the title made in his name.

But Mr. DeSaussure testifies that Whipple was present when the instructions were received, and stated that some of the money was earned by her.    His testimony, moreover, leaves no doubt on my mind that Whipple understood and approved the scope of the deed. And it is adjudged, accordingly, that the same is a subsisting and valid deed.

The testimony was taken by the Master, and will accompany this decree.    It remains to consider whether it entitles the plaintiff to the right which she claims.    The trusts are in these words, to wit: "In trust, nevertheless, to and for the joint and equal use, benefit and occupation of the said James Whipple and Mary Ann Whipple, for and during their joint lives, without being subject, in any manner whatsoever, to his debts, contracts or engagements, or his ejectment of her; and from and immediately after the determination of that joint estate, in case the said Mary Ann Whipple should die before the said James Whipple, then in trust for the joint and equal use, benefit and occupation of the said James Whipple and of Amelia Yates, daughter of the said Mary Ann Whipple, for and during their joint lives.    And upon the determination of that, or the preceding estate, by the death of the said James Whipple, during the lifetime of the said Amelia Yates, or of the said Mary Ann Whipple, the said James Whipple shall have the right to dispose, by his last will and testament, in writing, previously made and executed, of one-half of the said premises, to such person or persons, and for such estate or estates, as he pleases, not inconsistent with the legal rights and interest of the said Mary Ann Whipple, or Amelia Yates, (mother and daughter,) herein vested in them;

and, in default of such will, the said half part of the said premises shall vest in the said Mary Ann Whipple, if then living, her heirs and assigns forever. But if she be then dead, the same shall vest in the said Amelia Yates, her heirs and assigns forever. But if the said Mary Ann Whipple should survive the said James Whipple, then one-half of the said premises shall vest in the said Mary Ann Whipple. And if the said James Whipple should make no disposition, by will, of his half part thereof, then, and in that case, the whole of the said premises shall enure to the said Mary Ann Whipple, her heirs and assigns forever, with the power to dispose thereof by will, duly executed; and, in default of such will, then her half part of the said premises, or the whole thereof, as the case may be, shall vest in the said Amelia Yates, her heirs and assigns forever; or, if she be then dead, without leaving issue, to her brother, John Yates, his heirs and assigns forever."

Upon the death of Mary Ann Whipple, the plaintiff, her daughter became entitled to one undivided half of the property for life, certainly, if not in fee, with a contingent right to the other half, in case Whipple do not exercise the power of appointment reserved to him by the deed. She is, therefore, entitled to have the property partitioned. As to an account of the rent and profits from the defendant, I do not think, under the circumstances, it should extend back beyond the date of demand, and as that is not fixed by the testimony, the filing of the bill will be taken as the time.

It is ordered and decreed, that a writ of partition issue, according to the rules and practice of this Court, to make equal partition of the premises described in the bill, between the plaintiff, Amelia Yates, and the defendant, James Whipple, and that an account be taken, with all proper allowances of the value of the rents and profits of the same, since the date of the filing of the bill, and that the parties, or either of them, shall be at liberty to apply at the foot of this decree for further orders in the cause.

The defendant appealed, and now moved this Court to reverse the decree, upon the following grounds :

1. Because it is established by the testimony, that the whole purchase money in said deed mentioned was paid by the defendant, through Mary Ann Yates, and was his own earnings. He was, therefore, entitled to receive an absolute deed in fee of the entire property.

2. Because, even admitting the entire testimony of complainant

all the circumstances, taken together, shew that the deed in question, making provision for Mary Ann Yates, by the name of Mary Ann Whipple, and as the wife of James Whipple, of a joint estate for life, and, after her decease, for her daughter, was in the nature of a voluntary conveyance, obtained under the dictation, and by the undue influence of a shrewd, intelligent and unscrupulous woman, over a man of ignorance and weak intellect, and by the abuse of his confidence whilst acting as his agent in the management of this business, and, therefore, void, on the ground of public policy and equity.

3. Because, even admitting that the defendant was present at the time the instructions were given concerning the deed, which he positively denies in his answer, his total ignorance of the nature and scope of the deed prevented him from understanding or approving its purport. And being without learning, and unable to read or write, or understand words or letters, he could not have been aware that, under the deed, he took only a life estate in one undivided half of the property, with power to dispose thereof by will; and that Mary Ann Yates, in her lifetime, or the complainant, her daughter, after her mother's decease, could, at any moment, compel partition and sale of the property which he had intended for himself as a permanent home. The deed, therefore, should have been set aside and declared void, as the estate thereby conveyed was not such an one as he had contracted for, or had a right to expect.

4. Because the deed should have been declared void, as obtained by fraud in the confidential agent of defendant, who gave her final instructions, at the very time the purchase was to be completed and rendered effective and binding, by the payment of the money, to have the deed drawn in his name; and, admitting that he gave different instructions previous to that time, he was not concluded by them, but had the right to alter or modify them at any time before payment of the purchase money.

5. Because the testimony of General DeSaussure, upon which the Chancellor's decree is based, besides being inconclusive, and resting on memory, after the lapse of a number of years, stands almost entirely, if not wholly, unsupported. And in equity there can be no decree upon the testimony of a single witness against the answer, unless supported by special circumstances, which do not exist in this case.

6. Because the decree of the Chancellor does not determine what estate the complainant takes or is entitled to, but declares as fol-

lows: " Upon the death of Mary Ann Whipple, her daughter became entitled to one undivided half of .the property for life, certainly, if not in fee, with a contingent right to the other half, in case Whipple does not exercise the power of appointment reserved to him by the deed. She is, therefore, entitled to have the property partitioned." Enforcing this decree, therefore, would result in the offer of the property for sale, with an undefined and imperfect title, which would greatly depreciate its market value, to the detriment of this defendant, and deprive him of his just right to a sale, with an ascertained and definite title or estate in the complainant.

7. Because if the deed in question be partly voluntary and partly for consideration, as to the estate of Mary Ann Yates, or the complainant, it should not be enforced without knowing how much is voluntary and how much for consideration.

*King*, for appellant.

*DeSaussure*, contra.

The opinion of the Court was delivered by.

WRIGHT, A. J. The grounds of appeal, from 1 to 5, inclusive, present a single question of fact. In those grounds, the appellant demands that the deed from the representative of English to the appellant be set aside for fraud; but, if such a decree as that were made, the effect would be to revive the title in the heirs of English. That would hardly answer the purpose of the appellant. His purpose, we suppose, could only be effected by a judgment, setting aside, not the deed itself, but the trusts thereof, so as to leave the title in him, as the sole beneficial owner.

This would be to reform the deed, not to set it aside; but that could only be done upon the clearest proof that the trusts in favor of Mary Ann Whipple and her daughter were fraudulently inserted. The Chancellor held that there was no fraud, and we are unable to perceive that, in that respect, he miscarried in his judgment.

The sixth ground complains, in effect, that the Chancellor failed to decide that the appellee takes under the deed more than a life estate. His decision is, that she takes a life estate at least in one-half of the property, and he directs a commission to issue, to divide the property between her and the appellant.

The complaint is, that he ought to have gone further, and decided what will become of her half at her death. But such a decision would have been premature.

If the commissioners should make actual partition, it will stand good only so long as the appellee lives. If they should recommend a sale (and we cannot know beforehand that such will be their recommendation,) it will be time enough then to decide the questions that will come up on the return, one of which may be the point attempted to be raised by the 6th ground of appeal.

We cannot anticipate what the Circuit Court will do. If it should order a sale of the property, out and out, it would seem eminently proper that it should enquire whether there are future interests which require protection, and, if there are, to make such a decree for the preservation of the corpus as will protect those interests; the parties, no doubt, believe that there must be a sale, but the Court cannot know this until the information reaches them through the proper channel; and an opinion in anticipation of such information would be extra judicial.

Nor do we think there is anything in the 7th ground of appeal. It may be true that all the money paid for the property belonged to the appellant; still, if there was no fraud, if the trusts of the deed were inserted by his authority, direction, or consent, he is bound by them; the money being his, he might have taken the deed in his own name, and then, by a separate instrument, declared that he held the property in trust; and if he had done so, he would have been bound by the declaration.

Surely, then, it was competent for him to direct the grantor to declare the trusts. The mere fact that no consideration, except that of kindness and benevolence, moved him to make the declaration, or direct it to be made, does not invalidate it. As long ago as *Villers* vs. *Beaumont*, (1 Vern., 100,) it was determined, that if one make a gift of which he afterwards repents, the Court has no right to free him from the fetters with which he has voluntarily bound himself, but he must lie down in his own folly; and the doctrine of that case is law to this day—*Frances* vs. *Lehre*, (1 Rich. Eq., 271,)—and always will be, as long as law is founded upon reason and good sense.

The decretal order will, therefore, be modified, so that the writ directed by it to be issued will provide for the equal partition of the said premises between the plaintiff, Amelia Yates, and the defendant, James Whipple, during their joint lives. On the return to the writ the Circuit Court, in case of a sale of the premises being directed, will provide for the payment of the interest of the purchase money in equal shares to each of the said parties, during their

joint lives, and for the preservation of the principal, to await such proceedings as, on the death of either of them, may be instituted for the same, by those who may regard themselves as thereto entitled. The account ordered by the decree of the rents and profits will be taken in conformity with the directions therein contained.

*Moses,* C. J., and *Willard,* A. J., concurred.